*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1937**

In re the Marriage of:

Mary Patricia Myhre, petitioner,
Respondent,

vs.

Steven Kenneth Myhre,
Appellant.

**Filed July 13, 2015
Affirmed
Schellhas, Judge**

Dakota County District Court
File No. 19AV-FA-11-2029

Merlyn L. Meinerts, Meinerts Law Office, P.A., Burnsville, Minnesota (for respondent)

John T. Burns, Jr., Burns Law Office, Burnsville, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's amended marriage-dissolution judgment. We affirm.

**FACTS**

Appellant Steven Myhre (husband) and respondent Mary Myhre (wife) married in February 1998. Wife petitioned for marriage dissolution in June 2011. The district court entered a partial judgment and decree in February 2012, and based on the parties' stipulation, granted the parties joint legal and joint physical custody of their children and reserved various financial issues for trial. Before trial, the parties stipulated that, for purposes of spousal maintenance and child support, husband's gross annual income was $150,000 and wife's potential gross annual income was $50,000; and, for purposes of property division, husband would be awarded his telecommunications business and wife would be awarded her real-estate business. Following a three-day trial, the court implicitly rejected the parties' stipulation regarding wife's potential gross annual income of $50,000; awarded wife $2,760 in permanent monthly spousal maintenance, $915 in monthly child support, and $6,000 in need-based attorney fees; found the value of husband's telecommunications business to be $295,000 and the value of wife's real-estate business to be $0; and ordered entry of judgment accordingly.

Husband appealed, "arguing that the district court (1) abused its discretion by rejecting the parties' stipulation as to [wife]'s income in awarding spousal maintenance, (2) erred in calculating child support, (3) erred in valuing [hi]s business, and (4) abused its discretion by awarding [wife] need-based attorney fees." *Myhre v. Myhre*, No. A12-2276, 2013 WL 5976065, at *1 (Minn. App. Nov. 12, 2013). We affirmed the court's valuation of husband's telecommunications business but reversed and remanded on all remaining issues, reasoning that the court rejected the parties' stipulation as to wife's

2

potential income without giving the parties notice and an opportunity to litigate the issue and without making sufficient findings regarding wife's income. *Id.* at \*1–5.

On remand, the district court notified the parties of its rejection of their income stipulations, admitted evidence regarding both parties' incomes from before and after the dissolution trial, and entered an amended judgment and decree, finding that wife's average annual income for 2010 through 2013 was $22,369.06 and that husband's average annual income for 2008 through 2012 was $272,115.20. The court awarded wife $3,460 in permanent monthly spousal maintenance, $1,848 in monthly child support, and $6,000 in need-based attorney fees; ordered husband to acquire life insurance to secure his payment of spousal maintenance and child support; and denied husband's subsequent motion for amended findings.

This appeal follows.

**D E C I S I O N**

*Scope of remand*

Husband argues that the district court impermissibly expanded the scope of the remand by allowing evidence of both parties' incomes from after the original trial. "It is the duty of the trial court on remand to execute the mandate of th[e appellate] court strictly according to its terms." *Halverson v. Vill. of Deerwood*, 322 N.W.2d 761, 766 (Minn. 1982). "The trial court has no power to alter, amend, or modify [the] mandate" of the appellate court. *Id.* But "[the supreme court] ha[s] held that district courts are given broad discretion to determine how to proceed on remand, as they may act in any way not inconsistent with the remand instructions provided." *Janssen v. Best & Flanagan, LLP*,

704 N.W.2d 759, 763 (Minn. 2005). "Appellate courts review a district court's compliance with remand instructions under the deferential abuse of discretion standard." *Id.*

In *Myhre*, we stated: "We reverse the district court's maintenance award and remand for proceedings in which the parties must have the opportunity to stipulate to or litigate the issue of [wife]'s need for maintenance, including her income." 2013 WL 5976065, at *3. We did not preclude the district court on remand from reopening the record to consider additional evidence of the parties' incomes, whether from before or after the original trial. *See id.* We therefore conclude that the court did not "act in any way . . . inconsistent with the remand instructions provided" and did not abuse its discretion. *See Janssen*, 704 N.W.2d at 763.

### Rejection of the parties' stipulation regarding husband's income

Husband argues that the district court abused its discretion by rejecting the parties' stipulation regarding his income. "The use of stipulations in divorce proceedings has been approved by th[e supreme] court." *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997). "Stipulations are therefore accorded the sanctity of binding contracts." *Id.* But "[a district court] has a duty to protect the interests of both parties and all the citizens of the state to ensure that the stipulation is fair and reasonable to all." *Karon v. Karon*, 435 N.W.2d 501, 503 (Minn. 1989), *superseded in part by statute*, Minn. Stat. § 518.552, subd. 5 (1989). "[I]n deciding whether to approve a stipulation agreed to by married persons, a district court must exercise its independent judgment to determine whether a stipulation is, on the facts of the case in question, appropriate." *In re Marriage of Rettke*,

696 N.W.2d 846, 850−51 (Minn. App. 2005). A district court has authority to refuse to accept the terms of the stipulation in part or in total. *See Karon*, 435 N.W.2d at 503 (recognizing district court's authority to reject parties' stipulations).

Approximately two months before the remand hearing, the district court gave notice to the parties that it was rejecting their income stipulations. At the remand hearing, the court explained its reasoning as follows:

> [The stipulation as to husband's income is] not fair and equitable and I am not satisfied that full disclosure had been made. I think I said at some point at one of the innumerable hearings that it was puzzling and somewhat suspicious that [husband] could make so much money for so many years and basically . . . have very little to show for it.
>
> So, no, I'm not satisfied that full disclosure has been made and I don't think the stipulation is fair and equitable. [Husband] make[s] twice as much money as . . . stipulated . . ., and [wife] has never made $50,000 a year.

Indeed, husband's income tax documents show that his average annual W-2 and Schedule E income for 2008 through 2012 exceeded $272,000, substantially more than the stipulated amount of $150,000. On this record, we conclude that the district court did not abuse its discretion by rejecting the parties' stipulation regarding husband's income. To have accepted the stipulation would have impacted unfairly and unreasonably the awards of spousal maintenance and child support to wife.

*Calculation of husband's income*

"A district court's determination of income for maintenance purposes is a finding of fact and is not set aside unless clearly erroneous." *Peterka v. Peterka*, 675 N.W.2d 353, 357 (Minn. App. 2004). "Findings of fact are clearly erroneous when they are

manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Kampf v. Kampf*, 732 N.W.2d 630, 633 (Minn. App. 2007) (quotation omitted), *review denied* (Minn. Aug. 21, 2007).

Husband argues that the district court erred by considering any of his income above $150,000, for purposes of setting spousal maintenance, because the appraisal of his telecommunications business was based on the assumption that any income above $150,000 would be retained by or reinvested back into the business. Husband argues that to consider his income above $150,000 constitutes "double counting." We disagree. The appraiser normalized husband's *salary*, using a market salary, to determine the telecommunications business's historic profits. The appraisal contains no suggestion that the telecommunications business's profits must be retained by the business or reinvested by husband. In fact, the appraisal explicitly recognizes that "[d]uring the period in review, the Company distributed 97.4% of its net income."

Regardless, husband has failed to show error. The sole legal authority cited by husband in support of his argument is *O'Brien v. O'Brien*, a case in which the wife argued that the district court erred by excluding from its calculation of the husband's income rental payments from a property awarded to the husband. 343 N.W.2d 850, 851–52 (Minn. 1984). Relying on a 1982 statutory definition of income and noting the district court's wide discretion to determine spousal maintenance, the supreme court concluded that the rental payments were properly excluded from the husband's income because the valuation of the property already reflected "a capitalization of the income stream which the property produces." *Id.* at 852. After the supreme court decided *O'Brien*, the

6

legislature repealed the statute upon which the court had relied, section 518.54, subdivision 6. *See* 2006 Minn. Laws ch. 280, § 47, at 1145. The relevant portion of *O'Brien*, as relied on by husband, is therefore no longer operative.

Without legal support for his argument or some alternate theory, husband has failed to meet his burden of affirmatively showing that the district court erred in its finding of his income. *See Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) ("It is well to bear in mind that on appeal error is never presumed. It must be made to appear affirmatively before there can be reversal." (quotation omitted)); *Horodenski v. Lyndale Green Townhome Ass'n, Inc.*, 804 N.W.2d 366, 372 (Minn. App. 2011) ("[E]rror is not presumed on appeal, and the burden of showing error rests on the party asserting it."); *Palladium Holdings, LLC v. Zuni Mortg. Loan Trust 2006-OA1*, 775 N.W.2d 168, 178 (Minn. App. 2009) ("An appealing party bears the burden of demonstrating both error and prejudice."), *review denied* (Minn. Jan. 27, 2010). We are not persuaded that the court abused its discretion by finding that husband's income exceeded $150,000.

### Wife's need for maintenance

Husband argues that the district court abused its discretion in determining wife's need for maintenance. Appellate courts review a district court's maintenance award under an abuse-of-discretion standard. *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009). "There must be a clearly erroneous conclusion that is against logic and the facts on record before [an appellate] court will find that the [district] court abused its discretion." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984).

7

A district court may grant spousal maintenance to either spouse if the court finds that the spouse seeking maintenance either

> (a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or
> (b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn. Stat. § 518.552, subd. 1 (2014). "The [maintenance] statute lists eight non-exclusive factors for courts to consider when crafting maintenance orders . . . ." *Lee*, 775 N.W.2d at 636; *see* Minn. Stat. § 518.552, subd. 2 (2014).

The district court averaged wife's earnings for 2010 through 2013, arriving at a monthly average of $1,864. Husband does not challenge the court's finding as to wife's average monthly earnings but argues, without citation to legal authority, that the district court erred by not finding wife's "earning capacity." Husband's argument lacks merit.

In *Passolt v. Passolt*, we stated that, when addressing the amount and duration of a maintenance award, "the district court is to consider factors that include the time necessary for the recipient to acquire sufficient education or training to enable him or her to find appropriate employment, and the recipient's probability of completing education or training and becoming fully or partially self-supporting." 804 N.W.2d 18, 22 (Minn. App. 2011) (quotations omitted), *review denied* (Minn. Nov. 15, 2011). Here, the district court found that wife stated that "she does not need additional education or training to

8

pursue her career" but "simply needs time to develop a book of clients and contacts." The court noted that wife had associated with a successful real estate agent who was providing her with clients and that wife expected her earnings to increase over time. The court also found that wife was already partially self-supporting but could not meet her reasonable monthly budget. We conclude that the court's findings adequately address the factors identified in *Passolt*.

Husband also argues that the district court ignored wife's income-producing property, specifically, a purported monthly return of $2,000 to $3,000 on wife's premarital investment account and her property equalizer funds. But husband has not pointed to any evidence of this return, and wife's tax documents show that she is earning an average of less than $200 a month in dividends. While the court was required to consider wife's financial resources, *see* Minn. Stat. § 518.552, subd. 2(a), a failure to consider every such resource does not necessarily establish an abuse of discretion. In *Fink v. Fink*, in which the district court failed to consider roughly $310 of monthly income generated from income-producing assets, we stated that "[district] courts are authorized to look beyond the bare needs of the spouse seeking maintenance." 366 N.W.2d 340, 342 (Minn. App. 1985). And we affirmed the district court's maintenance award. *Id.* Here, even in light of the less-than-$200 of average monthly income generated by wife's assets, we also must take into account the court's express consideration of other factors in determining the maintenance award.

In evaluating the factors for determining maintenance, the district court found that the parties had spent at least $200,000 per year to maintain their standard of living and

9

that wife's monthly budget of $6,770 reflected a significant decrease from the standard of living she enjoyed during the marriage, noting that wife had incurred credit-card debt and had depleted the principal balance of a nonmarital asset to pay her expenses and attorney fees. The marital standard of living is one factor in determining maintenance. Minn. Stat. § 518.552, subd. 2(c).

Husband argues that the district court made no findings about wife's reasonable expenses. Although the court used the term "monthly budget" instead of "reasonable monthly expenses." We reject husband's argument that the court failed to make findings about wife's reasonable monthly expenses.

Husband also argues that the district court erred by using a monthly income of $1,462 to determine whether wife could meet her monthly needs. We decline to address husband's argument because he failed to include citation to the record and we do not find evidence in the record to support his argument. *See EOP-Nicollet Mall, L.L.C. v. Cnty. of Hennepin*, 723 N.W.2d 270, 279 n.12 (Minn. 2006) (treating argument as not properly before court to extent that party "did not provide record citation"). We conclude that the court did not abuse its discretion by awarding wife $3,460 per month in spousal maintenance.

*Award of permanent maintenance to wife*

Husband argues that the district court abused its discretion in determining the duration of maintenance to award wife. "[A] district court must order permanent maintenance if the court is uncertain that the spouse seeking maintenance can ever become self-supporting." *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009)

10

(quotation omitted); *see* Minn. Stat. § 518.552, subd. 3 (2014) ("Where there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award . . . .").

In this case, as part of its consideration of the statutory factors for calculating the amount and duration of spousal maintenance, the district court highlighted the high standard of living enjoyed by the parties during the marriage, wife's lack of a college degree, the many years she had been out of the workforce, the fact that she is starting a new career, her low annual income, and her age. The court explicitly stated that "[c]onsidering the standard of living enjoyed during the marriage, it is not likely [wife] will achieve comparable self-sufficiency."

Husband cites *Aaker v. Aaker*, 447 N.W.2d 607 (Minn. App. 1989), *review denied* (Minn. Jan. 12, 1990), and *Hall v. Hall*, 417 N.W.2d 300 (Minn. App. 1988), in support of his argument that this case is not appropriate for permanent spousal maintenance. But in each of the cited cases, the spousal-maintenance obligee was age 39. *See Aaker*, 447 N.W.2d at 611; *Hall*, 417 N.W.2d at 303. In this case, wife was age 47 at the time of the dissolution. In *Aaker*, the obligee had a college degree, 447 N.W.2d at 611, unlike wife in this case. Given the district court's consideration of the statutory factors and the statutory preference for awarding permanent maintenance in the event of uncertainty, we conclude that the court did not abuse its discretion by awarding permanent monthly spousal maintenance to wife.

*Calculation of child support*

Citing Minn. Stat. § 518A.34(b)(1), husband challenges the district court's calculation of child support. "It is well settled in cases involving the dissolution of marriages that the trial court is accorded broad discretion with respect to . . . provision for the . . . support of the children of the parties." *Rutten*, 347 N.W.2d at 50. Husband relies on his previous arguments challenging the court's findings regarding the parties' incomes. But as previously explained, husband has failed to show error with respect to these findings. We therefore conclude that the court did not abuse its discretion in its calculation of child support.

*Need-based attorney fees*

Husband argues that the district court abused its discretion by awarding wife $6,000 in need-based attorney fees.

> [T]he [district] court shall award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest the proceeding, provided it finds:
>
> (1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;
> (2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and
> (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

Minn. Stat. § 518.14, subd. 1 (2014). The supreme court has stated that "an award of attorney fees is committed to the discretion of the district court . . . ." *Lee*, 775 N.W.2d at

12

643. The supreme court also has stated that appellate courts review an award of attorney fees for an abuse of discretion. *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999).

Husband argues that the district court failed to make findings that "an award of fees was necessary for a good-faith assertion of [wife]'s rights" and that "[wife] lacks the means to pay her own attorney fees." But a district court does not abuse its discretion by failing to make separate findings on each of the statutory elements under section 518.14. *See id.* at 825–26 (rejecting husband's argument that district court abused its discretion by awarding attorney fees to wife, despite acknowledging that court made no separate finding of husband's ability to pay attorney fees, where language used by court reasonably implied that court believed husband had ability to pay wife's attorney fees and court was familiar with history of case and had access to parties' financial records); *see also Geske v. Marcolina*, 624 N.W.2d 813, 817 (Minn. App. 2001) ("[A] lack of specific findings on the statutory factors for a need-based fee award . . . is not fatal to an award . . . .").

In this case, the district court expressly found that wife's attorney fees were incurred in the good faith assertion of her rights in the proceeding. The court considered the approximately $80,000 wife had incurred in attorney fees, as well as the substantial difference in the parties' incomes, and noted that wife had paid a large portion of her attorney fees using nonmarital funds. *See Beck v. Kaplan*, 566 N.W.2d 723, 727 (Minn. 1997) (affirming fee award where party requesting attorney fees could satisfy fee obligation only by depleting retirement assets and where parties had "disparate financial circumstances"). The court also expressly stated that wife's monthly budget for the

13

children and herself, from which child support and spousal maintenance were calculated, did not include her monthly payments toward attorney fees. We conclude that the amended judgment reflects the court's adequate consideration of the statutory criteria for need-based attorney fees and that the court did not abuse its discretion by awarding need-based attorney fees to wife. *See Geske*, 624 N.W.2d at 817 (stating that findings on need-based fees are sufficient if they demonstrate district court's consideration of relevant factors).

### *Life insurance as security*

Husband argues that the district court abused its discretion by ordering him to acquire life insurance as security for spousal maintenance and child support without making findings regarding his insurability and the cost of obtaining insurance. Wife argues that husband waived this argument by failing to raise it in his first appeal to this court.

In *Peterson v. BASF Corp.*, the supreme court addressed the propriety "of reviewing an issue that could have been raised in a prior appeal, but was not." 675 N.W.2d 57, 66 (Minn. 2004), *vacated on other grounds*, *BASF Corp. v. Peterson*, 544 U.S. 1012, 125 S. Ct. 1968 (2005). In that case, the court noted that the issue raised in a subsequent petition for review was a legal one and that the relevant law and facts had not significantly changed since the prior petition for review. *See id.* at 67–68. The court concluded that "consideration of [the petitioner]'s [newly raised] arguments . . . would undermine principles of fairness and judicial economy." *Id.* at 68; *cf. Loo v. Loo*, 520 N.W.2d 740, 743–44 & n.2 (Minn. 1994) (reasoning that "[a]lthough none of the

14

principles or doctrines requiring that judicial decisions have preclusive effect apply . . . , the underlying principle that an adjudication on the merits of an issue is conclusive, and should not be relitigated, clearly applie[d]"); *Pedro v. Pedro*, 489 N.W.2d 798, 803 (Minn. App. 1992) (determining that appellants could not raise issue of personal liability in second appeal when parties did not raise issue in first appeal), *review denied* (Minn. Oct. 20, 1992).

Here, in the original judgment, the district court ordered husband to obtain life insurance. By the time of husband's first appeal, the sole authority for his insurance argument, *Lee*, had been decided. Neither the record nor this court's opinion in the first appeal suggests that husband challenged the life-insurance order in his first appeal. *See Myhre*, 2013 WL 5976065, at *1–5. Following remand, the amended judgment contains an identical order regarding life insurance, and husband makes no argument that the relevant facts have changed, significantly or otherwise, since his first appeal to this court. As in *Peterson*, to address husband's argument in this appeal would undermine principles of fairness and judicial economy. We therefore decline to address husband's life-insurance argument.

**Affirmed.**