*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0410**

In re the Marriage of:
Sonya Sebring Stylos, petitioner,
Appellant,

vs.

Lee Stylos,
Respondent.

**Filed November 21, 2016
Affirmed in part, reversed in part, and remanded
Toussaint, Judge***

Washington County District Court
File No. 82-FA-14-2703

Robert W. Due, DeWitt Mackall Crounse & Moore, S.C., Minneapolis, Minnesota (for appellant)

Kevin S. Sandstrom, Mark J. Vierling, Eckberg Lammers, P.C., Stillwater, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Reilly, Judge; and Toussaint, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**TOUSSAINT**, Judge

Appellant-wife challenges the district court's determinations regarding the amount and duration of spousal maintenance. Because we conclude the district court did not abuse its discretion in determining the amount of the spousal-maintenance award, we affirm the award of $1,500 per month to appellant. But because the district court abused its discretion in determining the duration of spousal maintenance, we reverse in part and remand.

## D E C I S I O N

"Maintenance is defined by statute as 'an award made in a dissolution or legal separation proceeding of payments from the future income or earnings of one spouse for the support and maintenance of the other.'" *Lee v. Lee*, 775 N.W.2d 631, 635 (Minn. 2009) (quoting Minn. Stat. § 518.003, subd. 3a (2008)). Minn. Stat. § 518.552 specifies eight factors for consideration in determining the amount and duration of spousal maintenance. Minn. Stat. § 518.552, subd. 2 (2014). "Each case must be decided on its own facts and no single statutory factor for determining the type or amount of maintenance is dispositive." *Broms v. Broms*, 353 N.W.2d 135, 138 (Minn. 1984).

We review spousal-maintenance determinations for an abuse of discretion. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). A district court abuses its discretion when it makes findings unsupported by the record or improperly applies the law. *Id.* "Findings of fact concerning spousal maintenance must be upheld unless they are clearly erroneous." *Gessner v. Gessner*, 487 N.W.2d 921, 923 (Minn. App. 1992). We apply de novo review to questions of law. *Melius v. Melius*, 765 N.W.2d 411, 414 (Minn. App. 2009).

**I.**

Appellant contends the district court abused its discretion by awarding $1,500 per month of spousal maintenance rather than her requested $2,300 per month. As noted above, we review the amount of a maintenance award for an abuse of discretion. *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009). The district court found appellant's net income to total $2,268 per month, while her reasonable needs totaled $5,312 per month. It awarded $1,500 per month in spousal maintenance, leaving appellant with a "shortfall" of $1,544 per month. The district court found respondent's net monthly income to total $7,166, while his reasonable needs amounted to $5,619. After paying for his reasonable needs and making the spousal-maintenance payment, respondent has $47 per month remaining of his income.

Appellant briefly argues that the district court was "perhaps influenced" by respondent's voluntary $1,500 monthly payments while the parties were separated and that reliance on that figure is problematic. The district court cited the figure in a discussion of appellant's inability to meet her needs without additional support and in determining that respondent has been "able to pay [appellant] this amount and meet his own needs." In so doing, the district court appropriately considered the Minn. Stat. § 518.552, subd. 2 factors of appellant's "ability to meet needs independently" and of respondent's ability "to meet needs while meeting those of the spouse seeking maintenance." Minn. Stat. § 518.522, subd. 2(a), (g).

Appellant next argues that the district court should not have excluded her post-trial submission of a certified public accountant's affidavit concerning the tax consequences of

3

the district court's decision. In her reply brief, however, she indicates that she "did not raise the exclusion of the post-trial affidavit of [CPA] Jennifer Loeffler as an issue on appeal." Instead, appellant bases her argument on appeal on the district court's error regarding her potential self-sufficiency. Even if she had raised the issue, the district court properly noted that consideration of the tax consequences of a district court's award is within its discretion, and that it should not speculate if it has insufficient evidence regarding such consequences. *Maurer v. Maurer*, 623 N.W.2d 604, 607 (Minn. 2001) (noting that the review of tax consequences is within a district court's discretion and opposing such consideration if the district court is presented with insufficient evidence to make an adequately informed decision on the point); *Miller v. Miller*, 352 N.W.2d 738, 744 (Minn. 1984) ("Although it is within the discretion of the trial court to consider the tax consequences . . . , we have repeatedly stated that the court should not speculate about possible tax consequences.").

Appellant then reaches her primary argument: that the district court's award disparately impacts the parties, "forcing [appellant] into poverty" and leaving respondent to enjoy his marital standard of living. Appellant asserts that the district court should have adopted a "'share the pain' approach whereby each party is left with insufficient income to meet their respective post-dissolution expenses." In support of this assertion, appellant cites *Maiers* and an unpublished opinion of this court. *See* Minn. Stat. § 480A.08, subd. 3(c) (2014) (stating that "[u]npublished opinions of the Court of Appeals are not precedential"). The district court noted these cases stand instead for "the rule that the standard of living of the marriage at the time of the dissolution should not be applied such

4

that a [district] court provides a higher standard of living to one party and a lower standard of living to another." *See Maiers*, 775 N.W.2d at 670 (considering whether "the district court applied inequitable standards of living to the two parties").

This court in *Maiers* noted that as a result of dissolution, "both parties may suffer a reduction in standard of living." *Id.* The notion that both parties may have financial problems as a result of a dissolution was recognized in *Nardini v. Nardini*. 414 N.W.2d 184, 198 (Minn. 1987). As appellant notes, *Nardini* also indicates that "the bulk of the economic burden should not be visited on one party without regard to the parties' standard of living during the marriage and without regard to that party's now limited ability to comp[]ete in the labor market." *Id.* The same sentence notes that "equity does not demand absolute parity in . . . post-dissolution positions." *Id.* The couple in *Nardini* bears similarities to appellant and respondent, but Mrs. Nardini had considerably fewer employable skills and no income of her own, leaving her to meet her needs with only the spousal-maintenance award of $1,200. *Id.* at 185-88, 197-98. Appellant has three times that between her income and spousal maintenance, with the possibility of greater earnings after completing her schooling or finding full-time employment. Therefore, *Nardini*, which appellant relies on by way of *Maiers*, is distinguishable.

Appellant quotes that the "purpose of a maintenance award is to allow the recipient and the obligor to have a standard of living that approximates the marital standard of living, as closely as is equitable under the circumstances." *Melius*, 765 N.W.2d at 416. Neither *Melius* nor *Peterka*, to which *Melius* cites, defines "equitable under the circumstances." *Id.*; *Peterka v. Peterka*, 675 N.W.2d 353, 358 (Minn. App. 2004). Appellant's proposed

"share the pain" approach contemplates awarding \$2,300 per month in spousal maintenance, leaving appellant "\$744 per month short" of meeting her reasonable needs and giving respondent "a similar shortfall of \$753 per month." In its award, the district court appears to have interpreted "equitable under the circumstances" to mean placing appellant "as close as practical to [the marital] standard of living, considering [respondent's] present ability to pay." Because absolute parity is not required, one could reasonably understand "equitable" to mean as much of respondent's income as he can spare while still satisfying his reasonable needs, provided appellant has income and the potential for greater earnings.

Appellant cites no caselaw supporting the argument that courts must use a "share the pain" approach, the district court did not misapply the law, and the facts upon which the district court relied are supported by the record.[1] As a result, the district court did not abuse its discretion in awarding \$1,500 per month in spousal maintenance.

## II.

Appellant contends the district court abused its discretion in awarding temporary spousal maintenance instead of permanent spousal maintenance. Appellant argues that all of the statutory factors indicate the propriety of a permanent award, that the district court did not explain how a period of 36 months would enable her to become self-sufficient, and that she could not meet her reasonable needs with the median paralegal salary. Again, we

---

[1] Neither party disputes the amounts of current income or the reasonable needs as calculated by the district court.

review the district court's decision regarding the duration of a maintenance award for an abuse of discretion. *Maiers*, 775 N.W.2d at 668.

The eight factors of Minn. Stat. § 518.552, subd. 2, also apply to duration. Appellant asserts that "practically all of the findings would support a permanent award." Another subdivision of the same statute weighs heavily in favor of a permanent award: "[w]here there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification." Minn. Stat. § 518.552, subd. 3 (2014).

Appellant argues there are no facts in the record to support the conclusion that obtaining a paralegal degree "would enhance her earning capacity" or that "obtaining full-time employment as a paralegal would allow her to cover her reasonable monthly needs as found by the district court and to become self-supporting." The district court considered each of the eight statutory factors, "including [appellant's] employment history during the four years prior to the dissolution, her ongoing education, and her wages from her part-time employment" before concluding that she "would obtain her paralegal degree in the near future and would be able to obtain full-time employment," and that "she would earn a sufficient income to become self-supporting within three years." The district court did not explain why it was confident appellant would obtain full-time employment and become self-supporting in that time, but appears to have based its conclusion in part on the parties' assertions as to the median wage for a paralegal.

If appellant were to make the median paralegal salary of $54,747 cited by both respondent and appellant, this would equal approximately $4,562 per month before taxes.

7

This is certainly not enough after taxes to meet the district court's reasonable monthly needs figure of $5,312. The district court did not include any calculations in its order to provide a basis for its finding of appellant's future self-sufficiency, and the record does not obviously support such a finding. Additionally, no evidence suggests a semblance of certainty that appellant would obtain a full-time position and earn the median paralegal salary before she retires, much less in the next three years.

A district court abuses its discretion when it makes findings unsupported by the record and when it misapplies the law. *Dobrin*, 569 N.W.2d at 202. The district court's finding of appellant's future self-sufficiency is unsupported by the record, and the district court did not offer an explanation to support such a conclusion. As noted above, if there is "uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification." Minn. Stat. § 518.552, subd. 3; *see* Minn. Stat. § 645.44, subd. 16 (2014) (stating that "'[s]hall' is mandatory"). It is unclear whether appellant will attain self-sufficiency.

Because the record does not support the district court's finding that appellant will attain self-sufficiency within three years and because Minn. Stat. § 518.552, subd. 3, requires a permanent award in the face of uncertainty, we reverse the district court's holding with regard to duration of spousal maintenance and remand to the district court to order a permanent award left open for later modification if circumstances change.

**Affirmed in part, reversed in part, and remanded.**