In re the Marriage of Dennis Leland **BJERKE, Petitioner, Respondent,**

v.

**Elizabeth Marie WILCOX, f.k.a. Elizabeth Marie Bjerke, Appellant.**

No. CO–86–1615.

Court of Appeals of Minnesota.

Feb. 24, 1987.

William P. Scott, Pipestone, for respondent.

Margaret K. Erickson, Southern Minnesota Regional Legal Services, Worthington, Eugene D. Mailander, Pamela J. Mailander, Malone & Mailander, Slayton, for appellant.

Considered and decided by WOZNIAK, P.J., and LESLIE and RANDALL, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

This is an appeal from an order modifying custody. The trial court reconsidered respondent Dennis Bjerke's modification motion after remand by this court of an earlier modification order, *Bjerke v. Wilcox*, 384 N.W.2d 250 (Minn.Ct.App.1986). We affirm.

## FACTS

Many of the facts are stated in our earlier opinion. *Bjerke*, 384 N.W.2d at 250–51. We note a few additional facts, as well as those which have arisen since the remand.

As we noted previously, the 1983 judgment and decree placed custody of Samantha with appellant Elizabeth Wilcox, subject to the "protective custody" of the county welfare agency for one year. Under the terms of the decree, Samantha was to remain with her maternal grandmother until Elizabeth completed in-patient treatment for chemical dependency, if recommended.

In April 1984, Elizabeth's chemical dependency counselor, stating her progress had been "minimal," recommended in-patient treatment. Elizabeth attended in-patient treatment for a month in April and May of 1984, and completed the program, but made only minimal progress. Upon finishing treatment, she left for South Dakota with her husband-to-be, leaving Samantha with her maternal grandparents.

In October 1984, at the second six-month review, the social worker recommended attempting to place Samantha with her father. She reported that Elizabeth had had little contact with her children. Elizabeth had remarried and moved to South Dakota (about 30 miles from Pipestone), where she was expecting a baby. She had been fired from one job and evicted for not paying rent. Dennis then brought his motion for change of custody.

The trial court appointed a guardian ad litem and ordered a custody study and psychological evaluations of all parties.

Home visits with Elizabeth and her husband Kevin Wilcox showed that they lived in a small one-bedroom apartment, were $640 behind in their rent, and had no income other than food stamps. Elizabeth's husband had had two recent DWI arrests and did not participate in either social service interview. The social worker and guardian ad litem recommended placing custody with Dennis.

Psychological evaluations indicated Dennis had a normal MMPI profile. His fiancee, however, showed an abnormal profile for which the psychologist expressed concern if she were to assume the major caregiving role. Elizabeth's MMPI was generally favorable, but indicated a problem with chemical dependency, as did that of her husband. The psychologist concluded that "the balance is in favor of Dennis" and his fiancee, subject to certain concerns he expressed. One of these was satisfied when Dennis obtained the promise of a job in Arizona.

The trial court found that Dennis was now fit to assume custody, while Elizabeth was not. The court transferred custody and continued the county's "protective supervision," to be replaced by agency supervision in Arizona. This court reversed and remanded, *Bjerke v. Wilcox*, 384 N.W.2d 250 (Minn.Ct.App.1986), for particularized findings, both on the best interests of the child and on the custody modification standard.

On remand, the court received further reports from the social worker already involved, the welfare agency in the grandparents' county, and an Arizona welfare worker. The court heard testimony only from Dennis, his wife, and Elizabeth. Testimony was almost entirely limited to events occurring since the May 1985 hearing, including Samantha's adjustment to Dennis' home in Arizona following the 1985 modification order.

The trial court made a number of findings on the present circumstances of the parties. The court found that Dennis' family unit was more stable than Elizabeth's, his mental health better, and his ability to give love, affection, and guidance greater. *See* Minn.Stat. § 518.17, subd. 1(f), (g), (h) (1986) (factors in determining the best interests of the child). The court found Elizabeth better able to maintain the child's sibling and family relationships. *See* Minn. Stat. § 518.17, subd. 1(c).

Addressing prior circumstances, the court found that from 1983 to May 1985, Elizabeth had failed to improve her circumstances so as to be able to assume custody. The court also found that during that period Samantha's emotional health would have been endangered by living with her mother.

The court concluded that Samantha's best interests were served by placing custody with Dennis. It concluded that Eliza-

beth's failure to improve was an implicit "agreement" to a modification of custody, and that this failure resulted in an integration into the maternal grandparents' home. *See* Minn.Stat. § 518.18(d), (i), (ii). Finally, the court concluded that Dennis' right to custody was superior to the interests of the grandparents.

## ISSUES

1. Did the trial court make findings adequate to sustain a modification of custody?

2. Does the evidence support the order modifying custody?

## ANALYSIS

■ 1. A change of custody requires findings of fact that a change has occurred in the circumstances of the child or custodian and that modification is necessary to serve the best interests of the child. *State ex rel. Gunderson v. Preuss,* 336 N.W.2d 546, 548 (Minn.1983). In applying these standards, courts must retain the custody established by a prior order unless:

[t]he child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Minn.Stat. § 518.18(d)(iii).

■ The trial court has not made a finding of a change of circumstances, nor has it made a finding that modification is necessary to serve the best interests of the child. In view of the unique circumstances of this case, however, and the delay involved, we decline to remand a second time. Given the substantial evidence supporting the modification, it is appropriate to decide this appeal based on the evidence of record. *See Brauer v. Brauer,* 384 N.W.2d 595, 597 (Minn.Ct.App.1986). Furthermore, following the remand, the trial court and the parties have had an opportunity to address the issue under the applicable standard. *Cf. Sefkow v. Sefkow,* 378 N.W.2d 72, 77 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Jan. 17, 1986) (no opportunity to address primary parent standards). By

finding "endangerment," the trial court has indicated its belief there is cause for modification. *Cf. Bjerke I,* 384 N.W.2d at 252 n. 3 (no particularized finding suggesting unfitness or danger).

2. The trial court found:

[t]hat between June of 1983 and May 21, 1985 the home of Elizabeth Wilcox was such that custody of Samantha would have endangered Samantha Bjerke's emotional health.

This finding is somewhat speculative because Samantha was living with her grandparents at the time rather than with Elizabeth. However, we believe this finding is supported by the evidence and satisfies the statutory modification standard under the circumstances of this case. *See* Minn.Stat. § 518.18(d)(iii). We need not address the court's conclusions concerning an agreement to modify custody or an "integration."

■ This court in *Taflin v. Taflin,* 366 N.W.2d 315, 320–21 (Minn.Ct.App.1985), held that the "present environment" referred to in section 518.18(d)(iii) "is intended to mean the judicially approved environment." In *Taflin* the children lived with their grandparents by private arrangement. Here, Samantha lived with the maternal grandparents initially by private arrangement. Under the terms of the divorce decree, Elizabeth was entitled to custody when she completed in-patient chemical dependency treatment. She did this on May 26, 1984. At that point, instead of assuming custody, she left for South Dakota with her husband-to-be.

■ The trial court did not have statutory authority for continued review of the custody order absent a modification motion. *See Young v. Young,* 370 N.W.2d 57, 63 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Sept. 13, 1985) (any temporary custody order has no effect after the dissolution decree is entered); *cf.* Minn.Stat. § 518.176, subd. 2 (1984) (court may order continuing supervision to assure the terms of the decree are carried out). Despite allegations of abuse and neglect, there was

no finding of neglect or dependency authorizing continuing jurisdiction.

■ Thus, the "judicially approved environment," at least as of May 26, 1984, was Elizabeth's home. The evidence established that neither she nor her husband had a dependable income or adequate living quarters. Moreover, she had failed to exercise regular visitation.

The evidence also established that the advantages of a change of custody outweighed the harm likely to be caused. Minn.Stat. § 518.18(d)(iii). Shortly before the 1985 hearing, Dennis obtained employment as an auto mechanic in Arizona. He was engaged to be married within weeks of the hearing. He had exercised regular visitation with Samantha. Both the guardian ad litem and the social worker recommended that he have custody. The allegations of sexual and physical abuse made against him were found to be unsubstantiated.

In *Young v. Young,* 370 N.W.2d 57, 63–64, this court held there was insufficient evidence to support a transfer of custody to father from mother, who had custody subject to a voluntary foster home placement. In *Young,* however, mother and children had made considerable progress in therapy for the problems leading to the placement, and the mother's concern for the children was evident. Moreover, there was little evidence regarding the father's parenting capacities, emotional health, or custodial environment. *Id.* at 64.

Here, there is no evidence Elizabeth has made significant progress in treatment or counseling as expected by the original decree. There is no lack of evidence on Dennis' mental or emotional health or parenting capacities, as he was fully evaluated by the court-appointed psychologist and interviewed by the social worker. Allegations against him of abuse were discounted by these professionals. *Cf. Young* at 64 (father's admitted physical abuse and alleged sexual abuse not addressed).

■ The evidence did not suggest a significant change in Elizabeth's circumstances. *See* Minn.Stat. § 518.18(d). At the time of the dissolution, however, she was still found unfit to have custody. The court should not be required to find a significant further deterioration in her circumstances in order to change custody. Such a reading of the statute would conflict with the "best interests of the child" standard and lead to an absurd result under the circumstances of this case.[1]

This court in its prior opinion indicated the trial court should have given more consideration to the grandparents' care. On remand, however, the grandparents withdrew their claim for custody in their own right. The trial court gave consideration to the importance of maintaining Samantha's sibling and family relationships, but found it outweighed by other factors.

### DECISION

The trial court has not made the findings required for a modification of custody. The appeal is appropriate for decision on the record, however. The evidence supports the trial court's modification of custody.

Affirmed.

---

1. While not argued as an alternative, we could also hold that the mother's failure to recover from chemical dependency itself constitutes a significant change in circumstances, because the original decree was predicated on her expected recovery.